In re St. Maurice BROWN, Jr. and Venera R. Brown, Debtors.

No. 02–2433–3F1.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 14, 2003.

Herbert M. Webb, III, Gainesville, FL, for Debtors.

Laurie A. Dart, Bangor, ME, for LPP Mortgage, Ltd.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Motion to Value Claim 2 of LPP Mortgage, Ltd. ("LPP") filed by Debtors and LPP's Response to Debtors' Motion to Value Claim 2. The Court conducted a hearing on December 18, 2002. Upon the evidence presented and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 18, 2002. On June 10, 2002 LPP filed a secured claim in the amount of $385,458.49, which the Clerk's Office designated as Claim 2. LPP is the first mortgagee on Debtors' principal residence. On September 20, 2002 Debtors filed Amended Motion to Value Claim 2 of LPP in which they assert that the fair market value of the property securing Claim 2 is $122,000.

The property consists of an approximate 2,500 square foot house situated on 82 acres in Lake Butler, Florida, a rural area heavily populated by mobile homes. The house is 1½ stories, has 4 bedrooms, two baths, and is 72 years old. Debtor's appraiser, Thomas C. Tompkins ("Tompkins") valued the property at $122,000 with $31,800 representing the value of the house and $90,200 representing the value of the land, while LPP's appraiser, Lee Hardenbrook ("Hardenbrook") valued the property at $280,000 with $79,000 representing the value of the house and $201,000 representing the value of the land.

### I. Value of the Land

#### a. Tompkin's Appraisal

Tompkins valued the land upon which the house is situated at $90,200 or $1,100 per acre. Tompkins used three comparables in his appraisal, none of which was used by Hardenbrook. Tompkin's Comparable 1 sold for $1,653 per acre. Hardenbrook testified that he did not use Tompkin's Comparable 1 because the property contains only 400 feet of road frontage and is intersected by a creek. Tompkins testified that the presence or absence of road frontage does not affect the value of rural agricultural land. He also testified that the presence of the creek does not affect the value of the property. Tompkins made a $200 per acre negative adjustment to Comparable 1, resulting in a $1,453 price per acre, because the property is more rectangular or square than Debtors' property, making it easier to fence or grow crops. Hardenbrook testified that in light of the fact that the buyer of the property is an area investor and land dealer, the property's purchase price is a good indication as to its value.

Tompkin's Comparable 2 sold for $1,000 per acre. Tompkins made a $100 per acre (net) negative adjustment to Comparable 2, resulting in a $900 price per acre. Hardenbrook testified that he completely discounted Tompkin's Comparable 2 because

almost half of it is comprised of a hardwood swamp.

Tompkin's Comparable 3 sold for $964 per acre. Tompkins made a $150 per acre (net) positive adjustment to Comparable 3, resulting in an $1,114 price per acre. Hardenbrook testified that he did not utilize Tompkin's Comparable 3 because the sale was consummated more than 4 years prior to the appraisal.[1] Tompkins testified that land values in Union County have remained stable over the last 4 to 5 years.

### b. *Hardenbrook's Appraisal*

Hardenbrook valued the land upon which the house is situated at $201,000 or $2,450 per acre.[2] Hardenbrook included twelve comparables in his appraisal, the first four of which are located in Union County. Tompkins did not use any of Hardenbrook's comparables.

Hardenbrook's Comparable 1 sold for $2,085 per acre. Hardenbrook made a $500 per acre positive adjustment to Comparable 1, resulting in a $2,585 price per acre. Tompkins testified that he did not use Hardenbrook's Comparable 1 because the property was purchased by an adjacent land owner who owned an air strip and wanted to protect his interest. Hardenbrook testified that he spoke with the buyer of the property who told him that the airstrip had no effect on the property's purchase price.

Hardenbrook's Comparable 2 sold for $2,340 per acre. Hardenbrook made a $200 per acre (net) negative adjustment resulting in a $2,140 price per acre. Although Hardenbrook's Comparable 2 was listed on the Vacant Land Sales Chart[3] as being located in Columbia County, it is actually located in Union County.

Hardenbrook's Comparable 3, approximately 175 acres, sold for $1,477 per acre. Hardenbrook made an $800 per acre (net) positive adjustment resulting in a $2,277 price per acre. Hardenbrook made a $500 per acre positive adjustment "to reflect the fact that the market values smaller parcels at a generally higher price per unit than larger parcels." Hardenbrook also made a $300 per acre positive adjustment to reflect the fact that the parcel was two separate parcels, stating that "[t]ypically non-compact parcels sell for less than compact parcels, requiring an adjustment." Tompkins testified that he did not use Hardenbrook's Comparable 3 because the Union County Property Appraiser classified it as "unqualified", that is, not the result of an arm's length transaction. Hardenbrook's appraisal indicates that the property was purchased from an estate.

Hardenbrook's Comparable 4, approximately 148 acres, sold for $2,097 per acre. Hardenbrook made an $800 per acre positive adjustment resulting in a $2,897 price per acre. Hardenbrook made a $500 per acre positive adjustment "to reflect the fact that the market values smaller parcels at a generally higher price per unit than larger parcels." Hardenbrook also made a $300 per acre positive adjustment to reflect the fact that the parcel was two separate parcels, stating that "[t]ypically non-compact parcels sell for less than compact parcels, requiring an adjustment." Tompkins testified that he did not use Hardenbrook's Comparable 4 because it was purchased by the Suwanee County

---

1. The sale was consummated in May, 1998.

2. The price per acre ($2,450) multiplied by the number of acres (82) actually equals $200,900. Hardenbrook rounded up to $201,000.

3. The Vacant Land Sales Chart is a summary prepared by Tompkins of the comparables from both appraisals.

Water District to be used for utilities. Hardenbrook testified that because the property is located 1½ miles from the city limits, there are hundreds of acres that could be used for the same purpose.

Hardenbrook's Comparables 5–12 are located in Bradford, Alachua, and Columbia Counties. Hardenbrook testified that Comparables 5–12 provide a good indication of value in the general rural market. Nonetheless, his appraisal gave them less weight in the determination of the property's value. Tompkins testified that Bradford, Alachua, and Columbia Counties are superior to Union County.

## II.  *Value of the house*

Tompkins assigned the house an effective age of 45 years. Tompkins used three comparables with respective effective ages of 45, 30, and 25 years in the residential portion of his appraisal. Tompkins testified that the house is in poor condition. He based this conclusion on his observation of the following: 1) numerous items of deferred maintenance, 2) ceilings in poor condition, including a partially collapsed ceiling in the recreational room, and 3) extensive rotting around the perimeter of the house.

Hardenbrook assigned the house an effective age of 20 years. Hardenbrook used twelve comparables, five of which had effective ages of 5 years, four of which had effective ages of 10 years, two of which had effective ages of 20 years, and one of which had an effective age of 15 years. Hardenbrook testified that the house is in average condition, noting that the bone structure, the underlying component of the house, appeared to be solid. He acknowledged that a leaking roof which was recently repaired caused wood rot and ceiling damage which he estimated could be repaired for $10,000.00. In his appraisal, Hardenbrook noted "though the subject requires some repair, it is very livable with no danger to safety or health, and is in fact occupied by the owner, as best as can be determined. The house is not in poor condition: it only requires some relatively minor structural and cosmetic repairs." Hardenbrook testified that a conclusion or assessment that a house is in poor condition would be based upon conditions such as broken windows, holes in the floor and wall, and foundation cracks, as well as the need for substantial structural renovation in order to render the house habitable.

## CONCLUSIONS OF LAW

██ Valuation of assets "is not an exact science and has inherent vagaries." *First Am. Bank of Va. v. Monica Road Assocs. (In re Monica Road Assocs.)*, 147 B.R. 385, 389 (Bankr.E.D.Va.1992). Courts have wide latitude in determining value. *In re Richards*, 1999 WL 14680, *7 (Bankr.E.D.Pa.1999). A court may consider appraisals and appraisers' testimony as to a property's value, but it is not bound by them. *Id.*

### I.  *Value of the Land*

██ With respect to the value of the land, the Court elects not to choose one appraisal over the other, that is, to accept one in its entirety and reject the other in its entirety. The Court believes that the better reasoned approach is to review all of the proposed comparables, including in its analysis only those that assist the Court in its determination.

#### a.  *Tompkin's Appraisal*

The Court finds no reason to exclude Tomkin's Comparable 1 or to reject his adjustment thereto. The Court is persuaded by Tompkin's testimony that: 1) the presence or absence of road frontage does not affect the value of rural agricul-

tural land and 2) the presence of the creek does not affect the property's value.

Hardenbrook testified that almost half of the property represented in Comparable 2 is a hardwood swamp. The Court finds this a compelling reason not to utilize Comparable 2 in its analysis.

The Court is troubled by the passage of over 4 years between the sale date in Comparable 3 and Tompkin's appraisal. The only evidence Debtors presented concerning the validity or utility of Comparable 3 is Tomkpin's conclusory assertion that land values in Union County have remained stable over the last 4 to 5 years. However, Hardenbrook's Comparables indicate otherwise. Accordingly, the Court will not utilize Tompkin's Comparable 3.

### b. *Hardenbrook's Appraisal*

The Court will use Hardenbrook's Comparable 1. The Court is persuaded by Hardenbrook's testimony that the presence of the airstrip on the adjacent property had no effect on the purchase price of the property. Because Debtors presented no evidence as to why the Court should exclude Hardenbrook's Comparable 2, the Court will use it.

The Court will use Hardenbrook's Comparable 3. The purchase of property from an estate is more likely to result in a decrease rather an increase to the purchase price. The Court will not exclude Hardenbrook's Comparable 3 simply because of its "unqualified" classification. However, based upon its experience in numerous real estate transactions, the Court does not agree with Hardenbrook's size and compactness adjustments and will therefore utilize Comparable 3's unadjusted price per acre.

The Court will utilize Hardenbrook's Comparable 4. The Court is persuaded by Hardenbrook's testimony that the avail-ability of hundreds of acres for purchase by the Suwanee County Water District for utilities does not render Comparable 4 unacceptable. However, as with Hardenbrook's Comparable 3, the Court does not agree with Hardenbrook's size and compactness adjustments and will therefore utilize Comparable 4's unadjusted price per acre.

The Court declines to make an explicit finding that Bradford, Alachua, and Columbia Counties, the counties in which Hardenbrook's Comparables 5–12 are located, are superior to Union County. However, despite Hardenbrook's assertion that Comparables 5–12 provide a good indication of the value of property in the general rural market, he accorded them less weight in his final reconciliation. The Court elects not to use Comparables 5–12 in its analysis.

### II. *Value of the House*

In contrast to the land portion of the appraisal, the appraisers offered scant testimony as to why their respective residential comparables were superior. Accordingly, although it has reviewed all of the residential comparables, the Court will not engage in an independent exhaustive analysis of the suitability of each or the preferability of some over others. The Court is more persuaded by Hardenbrook's testimony and residential appraisal and will value the house at $60,000.00.

### CONCLUSION

The Court will utilize and will give equal weight to Tompkins' Comparable 1 ($1,453 adjusted price per acre) and Hardenbrook's Comparables 1 ($2,585 adjusted price per acre), 2 ($2,140 adjusted price per acre), 3 ($1477 unadjusted price per acre), and 4 ($2,097 unadjusted price per acre). The Court values the land at $1,950 per acre for a total of $159,900. Combined

with the $60,000 value of the house, the total value of the collateral securing Claim 2 is $219,900. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.